Good morning, everyone. This morning, this panel is going to hear one case. It's captioned Pennsylvania State Conference v. Secretary of the Commonwealth. The appellant is the Republican National Committee et al. The appellees are the Pennsylvania State Conference and the Secretary of the Commonwealth. We'll also hear from one amicus. Council will hear you. Good morning, Your Honors. May it please the Court. John Gore for Appellant Richard Marino and the Republican Party Committees. With the Court's permission, I'd like to reserve five minutes of my time for rebuttal. Congress did not preempt all paper-based state voting rule laws in the materiality provision. Rather, Congress remedied a serious and specific problem, election officials preventing eligible individuals from registering to vote through misapplication of voter qualification rules. If you say that the materiality provision we're talking about only applies to registration-related paperwork, what does that do to the clause for other act requisite to voting? Does it render it meaningless? It gives it full effect. Other act requisite to voting has to be read in harmony with application and registration. To take a broader reading of other act requisite to voting, as the appellees suggest, would make application and registration superfluous. Under the adduced and generous canon, however, other act requisite to voting takes its meaning from application and registration and covers other instances where states might want to verify or determine the qualifications of an individual. Does that square with the definition of vote in the statute? It squares perfectly with the definition of vote. The definition of vote mentions all action necessary to make a vote effective and other things. Like the count ballots? It does mention that, for sure. Beyond the registration act, correct? But what the materiality provision guarantees is the right to vote. It's the right to take that action, all the action necessary to make the ballot count. That right is denied. To Judge Fortz's point, in the definition, it seems to classify registration as an act prerequisite to voting. There are. Registration and other acts prerequisite to voting, comma, which would seem to indicate that that's one group, registration and other prerequisites. So if it were meant to cabinet to just the registration process, wouldn't it have said application, comma, registration, comma, and other acts prerequisite to voting? It might have said that, but not necessarily, and here's why. The materiality provision applies only when election officials determine whether a qualified individual is, whether an individual is qualified to vote. That's the indetermining clause. Those determinations ordinarily happen at voter registration, and they certainly happen before the individual is given a ballot by election officials. But there might be some scenario where a qualification determination might be made later. Those would not necessarily be prerequisite to receiving the ballot, but they'd be requisite to voting. And so in that understanding, the other acts requisite to voting would capture all kinds of artifices that southern states and election officials were trying to employ at the time. They were using applications. They were using literacy tests. They were using other tests and devices to discriminate against qualified individuals and prevent them from registering and ultimately voting and having their vote count. So there is a difference between prerequisite and requisite? I don't believe that there is, necessarily needs to be, but if the court finds that there is one, then it would apply to acts taken at some other point in the process. But the language of the statute says requisite, correct? It does. The language of the provision says requisite. But even on that reading, it still only covers acts that are related to voter qualification determinations by virtue of the indetermining whether clause at the end of the provision. That clause also appears in other spots in Section 10101 in A2A. There is a very substantially identical formulation of indetermining whether an individual is qualified to vote. The appellees have not contested our position that when that phrase appears in subsection A, it limits subsection A to voter qualification determinations. But it also doesn't have the language or other action requisite, right? It doesn't have the other requisite language, correct? That's correct, although it does have the indetermining language, which talks about when the provision applies. The provision applies when election officials determine whether an individual is qualified to vote. That language also appears in the materiality provision in subsection B. Congress did not assign two different meanings to the same phrase in the same statute. But they're just at different points in time, right? I think you even just said a few minutes ago that the qualification question is not fixed in time, but is something that's verified when the ballot's about to be cast. For example, the residency date, correct? That is not necessarily correct. I think Congress was open to the possibility that that might happen, which is perhaps why it used requisite rather than prerequisite in subsection B. But as a general matter, including at the time the provision was enacted, qualification determinations were made at voter registration and then not revisited again later, except perhaps if there was some kind of challenge to an individual's qualifications later, which various state election codes do allow for. And so the other act requisite to voting would cover documents and errors and omissions on papers and records as part of that process. As part of the challenge process? As part of any process related to qualifications. But as a general matter, that's all handled at voter registration before the individual even receives the ballot. As a general matter, but you are saying it does also happen at other points in time? Ordinarily not, but it might possibly. And any papers at those points in time would also qualify? They could, potentially. If what's going on is election officials are actually determining whether an individual is qualified to vote. So that challenge is based on the qualifications? Correct, based on qualifications as opposed to something else. Well, the very declaration that's at issue in this case asks the voter, I declare I'm qualified to vote. So isn't that covered then by this, even your theory? I don't know if it, we don't believe that it's covered for two reasons. But even if it is covered, the date requirement would satisfy the materiality provision as part of that attestation. The attestation is actually a ballot casting rule. As the district court itself noted, voters only receive the ballot and can complete the attestation if election officials already have deemed them qualified. They have to be deemed qualified in order to register. They also have to be ascertained to be eligible for a mail ballot before the ballot is even sent out. So a conclusive determination, unless challenged later, has already been made with respect to the voter's qualifications. Well, obviously the state still cared about making sure they were qualified before they actually mailed the ballot back, correct? The state cared that they make the actual attestation. But look at the consequence of omitting a signature or date from the attestation. There's no determination that the individual is no longer qualified to vote. The ballot's simply not counted. That's a ballot casting rule. And moreover- Where in the statute does it tell me there's some different considerations for ballot casting rule when the definition of vote captures that very event? It says that throughout the statute. First, it says in determining whether an individual is qualified to vote. That narrows the moment in time or the decisions being made that are by election officials that are brought within the provision. It also uses the phrase, the right to vote. It's the right to take all action necessary. It doesn't guarantee that the ballot will be counted even if voters fail to comply with ballot casting rules. So the right to vote is denied when an election official- And this applies qualification rules in a way that prevents the voter from even receiving a ballot in the first place. We're not even given the opportunity to exercise the right to try to take all action necessary. But the right's not denied when election officials properly deem the individual qualified, send the individual a ballot, and then decline to count the ballot because the individual did not in fact take all action necessary to make the ballot effective. That's what ballot casting rules are all about. So your theme has to be that there are two aspects here. One, being qualified to vote. So let's go back to the 60s. You have a person who's qualified to show up at the polling place and to vote. Once in the voting place, then you have to cast your ballot in a way that meets whatever the state requirements are in that particular state. Is that correct? That's exactly right. And in all cases, in the latter, you have to have neutral laws neutrally applied. That's absolutely right, Your Honor. And in fact- Let me ask you this. If Congress put a period after the word material in A2B, could you still win? Absolutely. How so? The date requirement is material on the same period that the signature requirement is material. The Secretary has maintained that the signature requirement for absentee and mail-in ballots on the declaration, the same declaration I was just- But the key thing with respect to the date or the absentee or mail-in ballot is that before 8 p.m. on election day. And it also goes through the SURE system to be sure that you have the correct person. And so you clearly got somebody who's eligible to vote. What does the date have to do with anything? The date serves a couple of very important functions. So first, the date requirement, along with the signature requirement, performs a ritual function. It signifies to the voter the solemn significance of completing and submitting the ballot, as well as completing and submitting the attestation. That's the same function the signature requirement performs. And both of those requirements are in the same statutory clause in the election scope. So if the signature requirement is material, the date requirement is too. But the date requirement performs- Okay, good. You were going to answer that. It performs another important function. There's been a suggestion on the other side that the signature requirement is material because it can help confirm the voter's identity. But the date requirement is actually more effective at confirming the individual's identity than the signature requirement under current Pennsylvania law. Current Pennsylvania law precludes election officials from conducting signature matching. So when they see the signature, they can't go back and check it against existing records to determine whether it's the same signature or a signature- As I say, they don't even do the signature matching for absentee and mail-in ballots, do they? They do not. But the date requirement, they can confirm the accuracy of that. That's the only piece of voter-supplied information on the declaration whose accuracy can actually be tested by election officials. How is that material to the qualification of the voter, though? It's material to their identity, and they've argued that identity is a preliminary question or a threshold question for qualifications. And if that's correct- We don't think it necessarily needs to be construed as part of that. We think that election officials- How would they know whether or not the voter was qualified if they don't verify their identity? Yes. It's clear that election officials have to verify identity at a variety of times, including at qualification. So, yes, and if identity is within the materiality provision, then the date requirement is material, as I was just explaining. No, I don't think I follow. How is the date material relevant to the qualification of the voter when qualifications are based on static things like your age, residency? If the materiality provision captures the notion of identity, but at the threshold, election officials get to confirm the identity of the person as part of the inquiry into their qualifications, the date requirement is material and relevant to that inquiry because it's the piece of information that election officials can use to confirm the individual's identity. So, in that theory, though, the declarations in the record, some of which appear to have people's date of birth, those should have been counted, correct? No, not under state law because, again, our position is that the date requirement is a ballot casting rule and that the declaration and attestation itself are ballot casting rules because they result in the ballot not being counted. They don't result in a determination of qualification. The reason why they're not being counted is because the person didn't qualify to vote because they didn't comply with the requirement of the statute, right? No, that's not correct. The reason it's not being counted is that the person didn't comply with the rules to make it an effective ballot. Those rules are contemplated within the statutory definition of vote, and it's a separate body of rules. When someone goes to vote, they have to satisfy two categories of rules. They first have to satisfy the rules for establishing their qualifications, and that has to happen before they even receive a ballot from election officials. They then have to cast the ballot in accordance with the rules to making it effective, and those are applied after the ballot has been received. I understand the distinction you're making. What I'd like to understand is how do you conceive of an error then? I mean, certainly there is noncompliance that equates to deficiency under the framework that you're positing. But aren't some things just errors? When is something an error but not a deficiency? I think the statutory phrase is error or omission. Okay. An omission is obvious. An omission is leaving something off that you should have had on there. An error is something that you state incorrectly in a way that gets at your qualifications. Again, this is all – I understand your question would be going to the qualifications statute as opposed to the – If we set aside the timeframe, which I understand is also a way that you are understanding limitations implicit in the materiality provision. If we just focus on what is an error, that's what I'm trying to understand. Whether or not it's on a ballot casting or an application for registration, what is an error? Let's say there are rules on applications that presumptively make them deficient. When is something a mistake equating deficiency? And when is it just an error that counts under the provision? Let me give you a hypothetical. If someone went to register to vote and on the application you have to state your date of birth, your date of birth is relevant to your age. Or let's say the application made you state your age and you just misstated it. You said you were 17 and not 18, for example. That would be an error that's material. It goes to whether or not you're actually qualified. So if the election official denies your registration on that basis, that doesn't violate the materiality provision because that is actually material. I'm not asking you in the materiality. I'm asking you just in the definition of error. Because you're getting to the second stage, which is it applies, but maybe it doesn't under your definition if it's just deficient. You don't even have to worry about materiality. So what I'm asking is, for instance, maybe you would just say, well, you know, the rules are you have to have a date of birth. That's a deficient application, so there's no denial because, you know, it's deficient. The right to vote does not encompass submitting a deficient application. So I'm asking you when can we determine whether something is an error? Aren't some things just errors? You know, when can we determine when something's just an error? So it is easier in the ballot casting. So if we're talking about ballot casting, well, even in this, if there's an error, is there a difference between noncompliance, where you totally leave off a date, and imperfect compliance, where you include a date, but you got the year wrong, or you say September 31st? To the extent I follow your question, let me answer it this way. Okay, sorry if it's confusing. I apologize. If my answers are not on topic, please give me a follow-up question. The materiality provision itself speaks of errors or omissions on a paper or record used in determining whether someone's qualified to vote. So errors or omissions on the right kind of paperwork at the right point of the voting process are within the materiality provision. Otherwise, errors and omissions aren't within the materiality provision. And this is actually an important distinction with the Migliori case this court decided a few years ago. Judge Mady noted in his concurrence that Pennsylvania law actually treated errors and omissions with respect to the date requirement differently. That at the time, election officials would count something with an erroneous date, but would not count something that was totally undated with an omitted date. That's now changed since Ball. That was a factual circumstance that Judge Mady said might have made a difference in Migliori. And that's now changed. Under the Pennsylvania Supreme Court's decision in Ball, both an erroneous date and an omitted date, an undated ballot, are not counted under the date requirement as a matter of state law. So I think when it comes to drawing that line, both are in the materiality provision or out of the materiality provision based on the other language of the statute, like the Indetermining Weather Clause, the Applications and Registrations Limitation, and the Deny the Right to Vote Limitation. So prior to Ball, a September 31st date would be an error? That's correct. And that ballot would have been counted prior to Ball. But now since Ball, all ballot declarations that fail to comply with a date requirement, either because they have an erroneous date or because they are undated, are not counted as a matter of state law. And it's our position that the materiality provision doesn't even apply there because that's a ballot casting rule. The ballot is set aside, but there's no determination that the individual is qualified or not qualified. They're not removed from the voting rolls. They're still on the voting rolls and are fully qualified and registered to vote in subsequent elections. But if the position is correct that threshold identity questions are captured within the materiality provision, at least with respect to qualification determination, again, we don't think that the ballot declaration fits within the provision. But if it does, the date's material because the date is the only piece of information whose accuracy election officials can confirm. And we know from the Mahalia case that it can be used to confirm the identity of the voter. Because in that case, a third-party fraudster had actually completed the ballot and submitted it, and it was the handwritten date on the ballot, which was 12 days after the voter to whom the ballot had been issued had passed away, that was an indication that a third party had, in fact, completed the ballot and tried to submit it. But in this case, we have an evidentiary record by a group, a number of different public officials who testified that the date is material to nothing. So you're asking us to give it import despite the fact the election officials are saying it's material to nothing, correct? There were some election officials who have taken that position, and certainly the Secretary has taken that position. But there were other election officials, including from Lancaster County, which is where this Mahalia case arose, who noted that the date was part and parcel of the investigation into that ballot. But we had the election officials' testimony that they were really relying on other information about whether the voter was alive on Election Day. Okay, so that's true, but that's only part of the story. It's true that because the voter had passed away, the ballot would not have been counted. That's true under Pennsylvania law, and I think the law probably in every state, that if a voter casts a ballot but then passes away before Election Day, the ballot is not counted. But there are other consequences from a third party submitting the ballot, and when a third party submits a ballot, that third party, when it does so fraudulently, is also subject to criminal penalties. That criminal penalties piece and discovering that it was a third party rather than the decedent who had filled out the ballot and tried to submit it was all sussed out by the date requirement. But that was for the purposes for qualifications. That was for the purposes of a prosecution, yes? That's precisely our point as to why the date requirement doesn't sit within the materiality provision because it's not for qualifications. But things can fall into all different – things can serve multiple purposes, right? Certainly, but the date requirement and the attestation aren't actually used to determine any voter's qualifications. They're just used to determine the validity of the ballot. And the district court didn't really find otherwise. When does the role of the materiality provision end? I'm sorry? When does the role of the materiality provision end? It does not – the materiality provision does not apply outside of the scenario when election officials are determining a voter's qualifications. So once you get your registration, they send it to you. That's it in terms of qualification. And from then on, ballot casting takes over. That is how it works in Pennsylvania and in other states as a very universal matter. Qualification determinations are made only at registration and they aren't revisited at any other time. If for some reason, hypothetically, they were revisited at some other time, then the materiality provision might apply in that scenario as well. But both at the time of the provisions enactment and today, qualification determinations are made exclusively or virtually exclusively at voter registration. Weren't you just saying qualifications were being revisited in the Mahale situation? No, I don't believe qualifications were being revisited, but the identity of the person who submitted the ballot was being revisited. Okay, so that goes back to my earlier question. Under your framework, identity is not material to qualifications? We've taken the position that identity is not within the materiality provision. The Fifth Circuit suggested in the Vote.org case that it is. But as far as an error or omission being material to qualifications, is an error or omission about identity material to qualifications? It could potentially be material to qualifications, which is why I've explained that if for some reason the court determines that identity is within the materiality provision, then the date requirement is material and the Mahale Act case tells us why. The Mahale Act case demonstrates that the handwritten date can go to confirm identity or not. So your Mahale Act argument is just responsive to if in fact? Correct. We've argued that in the alternative. So our top line position is you look at the qualifications under the law, which are citizenship, residency, age, and felony status to determine what's material to voter qualification. We're open to the conclusion that identity might also be part of that as the Fifth Circuit reasoned in Vote.org. And if that's the case, then the date requirement would be material. Again, we still think the statute wouldn't apply to the date requirement because the date requirement isn't being used to make a qualification determination in that instance. But if we lose on that as well, then the date requirement is material. At Judge Ambrose's point, is there any point after someone is registered and qualified where a point in time, temporally, where the materiality provision applies? As a near universal matter, the answer is no. But it does not? If a state hypothetically had some process for challenging the voters' qualifications later and required submissions of papers and records as part of that challenge when it's revisiting qualifications, then the materiality provision might apply there. But that's hypothetical and there's nothing in the record to describe when that process happens or how it happens. But it might be a possibility that the materiality provision would apply at that process as well. I think you argued in your brief that if we were to conclude the materiality provision goes beyond the registration documents, that there would be a constitutionality problem. Yes. So I have a pretty limited question on that. Which test would we apply to measure the constitutionality at that stage? Are we doing Katzenbach rational basis, which is a voting rights act case? Are we doing congruent and proportional, which is foreign, which is religious freedom? We think there are two tests that the court has to apply. First is the plain statement test that was applied in Gregory v. Ashcroft, 14th Amendment case as well as under the Federalism Canyon, to determine whether Congress actually said it was doing that. If Congress didn't say it was extending the materiality provision to ballot casting rules, then it didn't and the case is over. And we think that's the better reading of the materiality provision. There's no plain statement that the provision extends to ballot casting rules. Second, even if Congress did make a plain statement, then Congress can only enact remedial legislation based on a sufficiently robust record to support the enforcement and remedial statute that's enacted. We think that the right test is the city of Burnie congruence and proportionality test. The city of Burnie actually cites Katzenbach as an example of that test. But regardless of how the court formulates the test, the materiality provision does not extend the ballot casting rules under that test because there's no congressional record to support that action. And even in Katzenbach and other cases, and Shelby County being a more recent example, the court has probed the legislative record for evidence and findings that would support the enforcement and remedial legislation that Congress enacted. That's absent here from this legislative record as I think the briefing makes clear. Okay. Let me see if my colleagues have any questions for you. How do you take a seat? All right. Now let's see. Let's be on rebuttal. May it please the court. For the Pennsylvania NAACP, you know, the organizational plaintiffs and the individual voter plaintiffs, I believe. In 2022. Can I just, just in terms of process, what are you going to cover? What is Mr. Lee going to cover that's different? What is Mr. Boyer going to cover that's different from you two, the first two? Your Honor, I'm prepared to cover any aspect of the merits or any aspect of the case under the court has questions. Are they going to cover something different or is it going to be a me too? I think they'll, they'll cover the, the particular perspectives that they have. Obviously they're representing local and state government entities and the United States government were representing the private plaintiffs at the lease, including the voters who've been denied the right to vote in this case. But I believe they're also prepared to address the merits issues. Your Honor, in 2022, over 10,000 Pennsylvanians were denied the right to vote based on a meaningless paperwork error. A mistake on a piece of paperwork. We've seen the record. I'd like just to ask you, what do we do with Justice Alito's statement that he thought our court was wrong in Igliori by ordering, finding that the materiality provision required the counting of certain votes? The very category of votes that you're talking about that were not counted in the 2022 election. Yes, Your Honor. I don't have to tell the court that the dissent from the denial of a stay in Igliori is non-presidential. I'd point out Justice Alito said, this is, this is my initial view on, with the time that I have allotted and it could change. And, and, and obviously that was on a stay application. It was reviewed pretty quickly. And I think it's also relevant that there's a dissent from a denial of a stay, I mean, to the extent that you consider a non-presidential opinion, the decision of the court to allow the ballots to be casted, or excuse me, the ballots in Lehigh County to be, to be included in the totals to be opened, and for those voters votes to be counted, also deserves some weight and consideration. So is there two things practically speaking here? One, that you become qualified to vote or register. And then, and then you cast the ballot. Do you agree with that? There are two functions here, two, two different things to do. I don't agree. I agree those are parts of the process, but I don't agree that the statute makes that distinction relevant. And if I may, Your Honor. Let's go back to the 60s then. What was the purpose of the 64 Act? The purpose of the 64 Act, among other things, was to ensure that voters were not deprived the right to vote, denied the franchise, based on meaningless paperwork errors, errors on forms that voters are required to fill out. For purposes of, primarily for purposes of qualification, whether or not. So. Otherwise, like you would misspell Louisiana on an application, and they would say, well, can't do it, or have a literacy test. Well, you can't read this the way we think you should read. Therefore, we're going to deny you registration. And what Congress recognized, and what's reflected in the text that Congress chose and used, it is that paperwork errors can come up at any point in the process. Of course, the initial decision to register is one place where voters are required to fill out paperwork, and where a meaningless mistake on a piece of paperwork, a misspelling. And you don't get the qualification. But once you do, either under the 64 Act, or under the Voting Rights Act of 65, you have a right to show up at the polling place. Because in those days, other than military, for the most part, you had to show up. Correct? I think you did have to generally show up to vote. I mean, there were, I mean, by far more percentage people voted at that point by showing up at the polling places. As a general matter, I think that's right. And once they showed up, let's say you have a paper ballot and there's an overvote. So that's not going to get counted, right? That's correct. And the materiality provision does not address, and this case does not involve overvotes, errors on the ballot itself. The ballot is the instrument of voting. I get it. But back in the 60s, it looks like, at least to the extent one looks at the words of the statute, at least to the extent one looks at the legislative history, is to prevent discrimination against African-Americans in connection with registering to vote, especially in southern states. Is that correct? That's correct. And what Congress recognized, and not just in registration, but discrimination that prevents the right to vote, the right to cast a ballot, have it counted, and to take any action necessary to make a vote effective. And what Congress recognized, based on that extensive record, was that there needed to be a broad prohibition against using irrelevant immaterial paperwork errors to deny the right to vote. And that is why Congress identified any error or omission on any record or paper relating to an application. To me, your answer to Judge Ambrose's question about overvoting puts a lot of work into categorizing a ballot as not paperwork that is related to an act requisite to voting. And setting that aside, it seems to be a way of avoiding the question, which is states have legitimate interest in discounting overvotes or even votes that are in different colored inks or votes that have errors or smudges. Usually those are either legislative decisions or judges who decide whether or not a different color ink or a smudge or a marcation is meant to sort of facilitate fraud or identify the voter. So who are we as a federal court to review those decisions? If the legislature has decided that there is a legitimate state interest in discounting overvotes or orange ink votes and that it's the discretion of electoral judges to decide those, where in 10101 or in the materiality provision itself do we have the power to review that type of rulemaking or casemaking? Your Honor, we're not asking the federal courts to look at the ballot to discern voter intent about itself. This case is about the declaration of elector form. It's a piece of paper. It's not the ballot. No, I understand that, but where is your limit? I'm trying to identify what is your limiting principle. You know, if in fact there's a legitimate state interest in finding certain ballots deficient, it seems that the road you're going down is basically as long as an error is immaterial to qualifications, then you're out of the box. But we're not talking about overvoting. We're not talking about double voting. But at some point maybe we are, and what is your limiting principle? So I think the answer is that an immaterial mistake on a piece of paperwork doesn't go to the deficiency or the validity of the ballot itself. It's a different question. But that's immateriality in general. The statute only asks us to consider immateriality as to qualifications. So if something is immaterial, I mean, for instance, overvoting is immaterial to qualifications. That's correct. But if you were denied the right to vote, your vote isn't counted because of an overvote. It's not an error or omission on a record or paper on a piece of paperwork that's made requisite to voting. And you look at the text of the statute. But what is your limiting principle as far as let's say a ballot is a piece of paper that is related to an act requisite to voting. What is the limiting principle as far as, I mean, I understand you're trying to locate it in that phrase. But what I'm trying to understand is if, in fact, the state has a valid interest in whatever paper you're going to define as falling under the act, and it falls under the act and it's immaterial to qualifications, it seems that you would say we would just have to say that violates the materiality provision regardless of whether or not, for instance, it might facilitate fraud or it might facilitate some other unsavory aspect of voting that the state has a legitimate interest in making rules about. So I think if there was a piece of required paperwork where there was an error or omission and a voter was being denied the right to vote because they made an error and it didn't go to their qualifications, then yes, the statute would apply. I don't think that the ballot and what's written on the ballot itself is totally different, and that's not the case. And in this case, there's a record that this date in particular is not used for anything having to do with determining a voter's qualifications. It's not used to determine their identity. It's not used to determine whether they voted on time. Pennsylvania law says that. So what if I'm paying a lot of voters to vote for Candidate A, and I say the way I'll know, the way you'll get paid is you put a little pink star on your secret envelope, which is a markation that will make your ballot void under Pennsylvania state law. And all of those votes, there are 50 votes with pink stars on those envelopes, and they're all discounted. Now, those would be void under Pennsylvania state law, but they would be immaterial to qualifications. So it seems that you're saying we would have to count those under the materiality provision. No, Your Honor, because there's no error or omission on a record or paper relating to an application or registration or act requisite to vote. Isn't that an error on a paper? No. You're forbidden to put that mark on there under state law. It's not an error on a paper in the sense that the voter hasn't been asked to fill out paperwork. And so we know we can look at the statute, registrations, applications, or other acts requisite to voting, and other acts requisite to voting are acts of completing paperwork, like applications, like registrations, like the declaration of electoral form here. So the statute cabins itself, it provides a scope that's related to paperwork. It's not even an error. It's the same question, but it's on the outer envelope, or actually, I guess we'll have to say it's on the ballot, but you used orange ink. That's how I'll know that you voted for Candidate A. And, again, I understand your argument that it's not paperwork related to voting, but assume it is, then would those have to be counted? It seems like you're saying they would. So, again, the ballot itself is not on a record. I understand that, but go with my hypothetical that it is a paperwork requisite to voting. It's not. You haven't been deemed to have omitted something on a piece of paperwork. But it is an error because state law expressly says it has to be in blue or black ink or pencil. So it's not the same as an error of getting, you know, incorrectly stating your age and days. So we would have to determine the quality of error? No. And, again, this is why it's important to understand that we're really talking, the statute limits itself to voting-related paperwork, paperwork that is required in order to cast a ballot, have it counted, make your vote effective. And so all the hypotheticals about the ballot itself or markings having to do with something other than paperwork, I mean, the statute was focused on this issue of voters making a mistake on paperwork, and we all make paperwork mistakes. And there is paperwork at different points in the process, where you're asked to affirm your qualifications or provide other information. That is what the statute targets. And it is clear that's what targets based on the statutory text. And so, conversely, the rule suggested that only registration is covered by the statute. There's great violence to the statutory text. The statute talks about errors or omissions on records or papers relating to applications, registrations, other acts requisite to voting. And we can limit that very easily. With that, we use some generous principle. Applications, registrations, or other similar pieces of paperwork that are required. Do we need to even resort to that principle if the statute is clear? I don't think you need to in this case because it's absolutely clear that this is a required piece of paperwork. It's a form. It's printed on the envelope. It's not part of the ballot. To be clear, it doesn't travel with the ballot, right? You put your ballot in your secrecy envelope. Once that form is checked out, they're separated. The ballot goes to a whole other place. It's a form. It's just like if you went to the polls and were asked to complete a declaration form, right? And in that case, if you wrote something wrong on the form there and were denied the right to vote, and this is the Ford case that we cite in our brief, in that case, it would clearly be an immaterial error and you'd be denied the right to vote if they turned you away from the polls because you got something wrong on a form and didn't go to your falsification. Let's go back to A2B. If you put a period after the word material, would that help you? I don't think it would be necessary to do that. I understand. Would it help you? I don't think it would help or hurt our argument. Really? I think if you put a period and got rid of indeterminate qualifications to vote, then there would potentially be a broader universe of things to do in terms of what is material, what isn't material. But at the end of the day – What work does in determining whether each such individual is qualified under state law to vote in such election? What work does that do in A2B? So the way the statute is constructed, you have the independent clause that says what it applies to. Any denial of the right to vote based on an error or omission on a record or paper – on a piece of paperwork that's required for voting. If – so in the dependent clauses, if the error or omission is not material in determining a voter's qualifications to vote. So the dependent clause comes in once you've identified you're within the scope of the statute. And in that sense, the indeterminate language indicates that the question is, is it material in determining qualifications to vote? And you can look at this two different ways. You can look at it in sort of a categorical way, look at the qualifications, age, residency, and then look at the error itself. And I think Migliore basically took that approach of saying this date doesn't have any – and it does, it's undisputed. It doesn't have anything to do with the qualifications to vote. You can also look at it as a mixed question. And here you can do that because there's an extensive record of discovery from all 67 counties showing that this date was not used for determining qualifications. And in case it mattered, right, in case you wanted to take a broader view, if you wanted to do the equivalent of putting a period there, it's not used for any other purpose either. There's two different interpretations possible. Doesn't that begin to allow the suggestion of ambiguity? So I wouldn't say there are two interpretations possible. I'd say there are two approaches that the court can take. There's a categorical approach and there's a more mixed question approach. And I would say under either approach, the result in this case would be date. So does indetermining whether such individual is qualified under state law to vote in such election, does that limit what goes before in A2B? Yes. The question is, is the error remission material indetermining whether someone meets the qualifications under state laws? But you're past the qualification stage and you are into the vote casting stage. So isn't that a different aspect of what it needs, what needs to be done in terms of the process to have your vote counted? So qualifications are determined, ascertained, confirmed under Pennsylvania law at various times. When you apply for a mail ballot, you're asked to attest your qualifications. On this declaration in elector form, you're asked to attest your qualifications. In order to vote in Pennsylvania, don't you first have to be qualified? That is, you have to be given a registration form or whatever that says that Mary Savitsky can vote in Pennsylvania. Yes. If he's over 18, he's not a felon, blah, blah, blah. Yes. Okay. That's qualification. And then vote casting is things like, you know, don't have overvotes. You have to have, you know, signatures, et cetera. And Pennsylvania has told us that that vote casting, whatever, for whatever reason, the date on there is mandatory. Isn't that correct in Ball? Yes. Ball says that it is mandatory that you write the date on that form. And if you don't write the date on the form, then your ballot won't be counted. If it's mandatory in order to cast the vote, how does that in any way relate to the qualification of the individual to vote? It does not, Your Honor. It does not relate to it. And the point is that because it doesn't. Then in determining an A2B must limit what goes before and must be separate from vote casting. It limits what goes before in the dependent clause. It does not limit the independent clause. I'm going to try that again. What do you mean by dependent, independent clause? The structure of the statute is as follows. Prohibits denial of the right to vote because of an error or omission on a record or paper related to an application, registration, or other act requisite to voting. Required paperwork. That's the independent clause. That's the scope of the statute. Denials of the right to vote because of paperwork errors on required paperwork. Comma, if, if. So now we look at the dependent clause as if the error or omission is not material in determining a voter's qualifications to vote. So the qualifications to vote reference only relates to the scope of this dependent clause. It relates to the scope of what is the error or omission material. Is it the type of error or omission that can be used to disenfranchise a voter? It does not relate to the scope of the statute as a whole, and this is different than the other sub-provisions. The other sub-provisions apply to qualifications generally. So when Congress uses different language, it indicates different meanings. So it's the dependent, your dependent clause, which is the one that begins, if such error. It's focusing on the nature of the error, not the paperwork.  The nature of the paperwork is described in the independent clause in the statute. And in the independent clause, which defines the scope of the statute generally, it is any error or omission on any record or paper relating to application, registration, or other act requisite to voting. Required paperwork, like a registration, like an application, like your application for a mail ballot, like the declaration of lecture form. Here, like a form that one might be presented with at the polls. The scope of the statute is paperwork, and that makes sense because Congress wanted to ensure that voters were not disenfranchised because of immaterial paperwork errors. That is, paperwork errors that didn't go to determining, are they really qualified to vote? Voters attested those qualifications at various points along the way. But this date? So your answer to Judge Chung was, if there is a mistake in connection with the ballot, let's say an overvote or whatever, is that, I thought you said that wasn't a paper under A2B. No, and I think if there is ambiguity on that question, and the question isn't presented here, but if that question were presented and there were ambiguity, you could use the Houston generous canon there to say, oh, is it an error or paper related to an act requisite to voting? Well, what's an act requisite to voting? You can't use it in A2B, right? When A2B says that you have application, registration, or other act requisite to voting, you have two generals, application, registration, and then other act requisite to voting should somehow fit with an application or registration, should it not, if you use that particular canon? Absolutely, Your Honor, and the declaration of elector form is much like a registration form, an application form. I mean, they're all pieces of paperwork that voters must complete, and they're required to make your vote effective, that are requisite to voting as a statute. So you're saying if we ignore the definition of vote in 101-01, you should still win because you're saying the declaration form is of a like nature of the application and registration because it's another thing that verifies qualification to vote. Am I understanding you correctly? I think we would still win. I'd certainly be telling you that we'd still win, but I think the definition of vote in the statute, that capacious definition absolutely makes it crystal clear. It certainly captures, from your point of view, all of the activity. Even from your point of view, we don't even have to decide if it captures the actual ballot itself. Correct. And the difference, this goes to the point you were discussing with Mr. Gore, the difference between prerequisite and requisite, requisite is a little bit broader, and it just ensures that anything that's required for your vote to ultimately be counted, at some point, any piece of paperwork that ends up being required, they have to check the paperwork, it is covered by the statute. So it's paperwork at any point that's required, necessary for your vote to be counted. So you're saying that the handwritten date on the ballot that's sent in is immaterial to determining voter qualification, is that correct? The handwritten date on the declaration of elector form, which I would strenuously indicate is not the ballot, is yes, not material in determining voter qualifications, and that's undisputed on the record. And so if it's not material to qualification, then it would be material to what, administering the election generally? So I don't, I think on this record, it's not particularly material to anything. And in fact, and this is, this is really. What is the Pennsylvania Supreme Court told us on that? The Pennsylvania Supreme Court has said that as a matter of state law, shall means that it's required and voters have to do it or else their votes won't be counted. But the Pennsylvania Supreme Court didn't, didn't indicate. It says is qualified under state law in determining whether such individual is qualified under state law. Correct. And a voter's qualifications under state law are their age, county residence, citizenship, they have a felony conviction. It's not, did you follow every, every box and every piece of paperwork? And of course, if it was, then any manner of paperwork, including, you know, how many days old are you could be imposed, and that would be considered a qualification. The Fifth Circuit just rejected this argument. But in order to overcome ball, you have to revert, revert to or apply the federal statute claiming it preempts. And that that federal statute relates to the vote casting process in some way. Because Pennsylvania law says it does relate in some way and you don't count the vote and you're saying it's overridden by what's in the 64 Civil Rights Act. So I would, I would have to say yes to that, right? I don't think I could say yes that in the sense that we don't need to overcome ball. Ball only talks about is this date. Do you have to put this on for your vote to count or not? It doesn't talk about what the 64 Act requires. And it doesn't talk about what the purpose of the date. You have to say that the 64 Act somehow overrides ball. No, I think the 64 Act applies and requires those to be counted. But I don't I don't think it overrides it. I mean, if if you want to look at it, you want the votes to count. You want the votes to count. Absolutely. Ball says that they don't count if they're misdated or undated. Correct. OK, well, if you want to look at. I guess I did. I just told her I didn't have any. But following up on Judge Ambrose, is there a difference between noncompliance under ball, which said that dating is mandatory and imperfect compliance? So dating is mandatory. If I omit my date, that's noncompliant. If I err in my date, I've complied with the mandatory provision, but I've complied imperfectly. And ball says the effect of that error is that the declaration is insufficient. Does the materiality provision allow us to consider the effect of the error under federal law as opposed to under state law? Yeah, I think the materiality provision requires you to consider the effect. But is that different than the total omission of the date? So for purposes of the materiality provision, if you are being denied the right to vote based on an error or omission, the omission of the date or a date that's deemed to be incorrect, if the date is not material in determining qualifications to vote. And here again, the record is crystal clear that it's not. It's not used in determining when you signed the form. It's not used in determining whether your ballot was timely received. It is pure paperwork, a pure paperwork error. It doesn't matter whether it's an error or an omission. Although I think the fact that in ball, the court came up with a range. Paperwork error relating to qualification or paperwork error in connection with casting the ballot. It's a paperwork error on a form that is required for your ballot. One or the other. Qualification or casting the ballot. It certainly doesn't relate to qualifications. I don't think it relates to casting the ballot either. But doesn't A2B relate to qualification? The dependent clause, the question of whether the error or omission is one for which you can be denied the right to vote, does relate to qualifications. But the scope of the statute is any piece of paperwork that's required for your vote to count. And Congress's reason for doing that was to ensure that some other new piece of paperwork wasn't inserted and some are the part of the process. And we know that paperwork voters need to fill out at different points in the process in order to block the ultimate exercise of the franchise. So you're not drawing some distinction between ballot casting documents, putting aside the ballot itself, and everything else? I don't think the statute draws that distinction. I don't think that you need to draw that distinction. If there's paperwork that's required in order for your vote to be cast and be counted in order to make your vote effective, then the materiality provision is going to apply. Most of the time, the required paperwork is going to look like the declaration of election form or some other form where you're going to attest your qualifications. And that's a different issue. This doesn't have to do with whether a voter is attesting their qualifications. It's just a date. It's just a date that they handwrite on a form that's not used for any purpose. That's why this is a clear and fairly straightforward and easy case. And it's why the court in Migliore could view it categorically and say, this state doesn't do anything. This state doesn't go to qualifications, doesn't go to whether a ballot is timely received. And therefore, it is a violation of the statute to deny the right to vote. Over 10,000 Pennsylvanians in 2022 based on an irrelevant paperwork error. May it please the court, Jason Lee for the United States. This court should reject intervener's atextual argument for restricting the scope of the materiality provision. As their argument earlier makes clear, they are asking this court effectively to read the phrase requisite to voting as requisite to registration or remaining registered. That's an implausible reading of the text. The materiality provision already expressly and separately mentions registration. And it defines the term vote in the phrase requisite to voting as being not limited to registration. That's a fair reading if you put a period after the word material in A2B. But what am I to make of what comes after that, the indetermining provision? The indetermining simply sets the standard for materiality. It tells you what types of errors or omissions are material, whether or not they are material in determining whether or not someone is qualified. So that's the standard for materiality. The preceding phrase simply talks about when the error may occur. If the error occurs on voting related paperwork. But Mr. Lee, in your own brief, when you're responding to appellant's argument about overvoting, undervoting, you atextually say on page 17 of your brief that it means the right to cast a ballot, in quotations, without fear of it being excluded due to immaterial paperwork relating to an act requisite to voting. But the immateriality isn't to the act requisite to voting, to Judge Arambo's point, it's to qualifications, correct? The immateriality is whether or not that information or act being required is necessary for determining if someone is eligible to vote. So for example here, we have a voter declaration form on the back of this secrecy envelope. As part of that declaration, you atest that you have not previously voted in this election. That renders you eligible to cast the mail ballot. I understand that argument, but I guess this particular part of your brief was in response to appellant's argument about the state's interest in excluding votes such as overvoting, undervoting, things that might identify the voters which would facilitate fraud. So, you know, like different color inks, smudges, erasers, things like that. So how do you answer the argument that your interpretation would require the counting of those types of votes? It doesn't require those kinds of votes. So let me give you an example. So it's because it's not an error or omission on voting related paperwork. And let me take a different comparison. So we were just talking about overvoting. Consider undervoting, so where a voter has not chosen a preferred candidate. The materiality provision doesn't require that that vote be counted, even though there's technically an omission, because there's no way to determine the voter's intent. What the voter has done is render it impossible for that vote to be counted. And doesn't that require us to ascertain, well, in this particular state law that's being challenged, the state is legitimately addressing intent of the voter or identity of the voter? It seems that this is taking us down a path where we have to assess the validity of the state interest or statute. No, Your Honor. The materiality provision does not dictate how states determine the intent of the voter. That's actually handled by a different statute, the Help America Vote Act. Let me give this court the citation. It's 52 U.S.C. 21081A, 21081A. Under that provision, A6 specifically, Congress required states to pass nondiscriminatory standards that define what a vote is, that what will be counted as a vote for each category of voting. But that doesn't – the existence of that statute doesn't mean that your argument isn't going down this path. It just means there's another statute that was specifically meant to address it. Yes, that puts those types of determinations of voter intent vested in the state. It also specifically provides protections in these types of circumstances for overvoting. It requires that a voter be told that they're overvoting. They're told about the effects of overvoting and be given an opportunity to correct that error. So these are the types of things that Congress has addressed separately, not under the materiality provision. Is there anything within the four corners of 10101, including the definition of vote, that would allow us to make that determination without reliance on the statute just provided to us? Certainly there are other textual indicators in the statute that this is not what Congress is trying to get at. This is not an act requisite to voting. It's the act of voting itself. It's not a paper relating to an act of voting. It's the ballot itself. And so there's certainly – your line, Brian, is around the actual ballot. The ballot itself, completion of the ballot, is not covered under paperwork related to other acts. That's a permissible reading of the statute. Is that what you're advocating, though? I'm trying to understand your position. That would be a permissible reading of the statute. But, of course, the broader question before this Court is not whether or not it reaches the specific ballot, but whether or not it reaches beyond registration at all. And, of course, the text supports a reading of that. We know that that's what Congress was intending to do in the 1963 House report. Once you read beyond registration, you are in state law land. And state law land tells us, for whatever reason, that the date is mandatory. Just because something is mandatory under state law doesn't mean it's material under the materiality provision. And, of course, state actors need to comply with federal law under the Supremacy Law. My view is materiality under the materiality provision relates to what seems to be qualification, not vote casting. That's correct. But as made clear on the citations in our amicus brief on pages 15 and 16, that happens at multiple points in the voting process. It happens upon receipt of application for a mail ballot. It happens when a voter arrives at the polling place. It happens when state and local officials have to consider provisional ballots. So even under interveners' approach of determining whether or not someone's qualified to vote under state law, it happens after registration. And certainly Congress, in looking at this problem, didn't want to adopt a self-defeating statute as discussed in the Protect Democracy amicus brief. What Congress was doing during this eight-year period was trying to reduce circumvention of previously enacted voting protections. It was trying to close loopholes. Certainly Congress is not going to adopt a protection that has such an obvious loophole where, you know, officials are barred from rejecting a person's registration from immaterial error, but they can do so at the polling place when presented with a ballot based on the same immaterial error. So it seems to me in advocating that paperwork is related to determining qualifications later in the process, it must implicitly incorporate identity as part of a qualification. Certainly determining whether someone is who they say they are is, you know, a premise of a statutory qualification to vote. Your adversary says that if we read this statute to cover beyond registration, that we will venture into a potentially unconstitutional interpretation. What is your response, and what standard applies? Yes, I definitely would like to address that issue, Your Honor. So there's the federalism canon, and there's the constitutional avoidance canon. The federalism canon doesn't apply here. We've discussed that in the brief, but I'll provide one additional argument, which is in 1964 when the provision was enacted, it applied, you know, past registration based on the text, as we've discussed, but only to federal elections. The next year, Congress struck the word federal, thus making clear that it sought to apply the provision beyond registration to state and local elections. So there's no need to resort to use of the federalism canon. Congress already made clear what it intends to do. The only question then is whether or not Congress had the constitutional authority to extend it to state. But the federal statute, even if you don't resort to a federalism canon, that is that you can look at the federal statute. The federal statute says qualified under state law. Yes, Your Honor. That's what it's limited to. That is the type of error that is the standard for determining whether something's material or not, whether or not you can reject a person's application, reject a person's ballot for an immaterial error. Material in determining whether a person is qualified under state law to vote in such an election. Yes. And if it is material in determining if someone's qualified, then it is a material error or omission. If it doesn't go to that, then it's an immaterial error or omission. But getting back to Congress's- But it doesn't go to qualifications at this point. If it does go to a person's qualifications, then maybe a disqualification of a person's ballot in that circumstance could be permissible. But getting to Congress's authority, again, the only question is whether or not Congress had the authority to adopt this. Of course, it's the Katzenbach rational means test that applies. At Section 4 of Katzenbach, the Supreme Court used words 11 times along the lines of acceptable, permissible. That's the standard that should be applied. Interveners cite two cases suggesting that the rational means test doesn't apply. The Fifth Circuit's decision in Veazey, at their citation, the Fifth Circuit's saying no such thing. It's paraphrasing Texas's argument. And certainly their reading of Veazey is contrary to what the Fifth Circuit said two months ago in Vote.org at footnote 11. They also cite the Fourth Circuit's case in Roof. Roof did not say that the same standard applies under the 14th and 15th Amendment. It talked about the rational means test and a congruency and proportional test under the 15th Amendment and the 14th Amendment. So neither the federalism arguments they raised nor the constitutional avoidance arguments they raised required their result here. Let me see if my colleagues have any other questions. Thank you. This Court should read the materiality provision to reach beyond registration just as Congress wrote it. Thank you. Thank you. Good morning, Your Honors. And may it please the Court, Jacob Boyer, on behalf of the Secretary of the Commonwealth. I'd like to begin by spending a little bit of time with the date and addressing some of the questions that have been asked about what does the date do and what do we make of the Supreme Court's decision to involve the Supreme Court? There's no doubt in this record that the date is the basis for denying the right to vote of indisputably qualified voters. Tens of thousands, 10,000 in the 2022 election, but thousands in every election. And those are, as the record shows, predominantly older voters. The way to make sense, Judge Ambrose, of the Supreme Court's decision to involve is not that it informs the outcome here. The Supreme Court's decision to involve is a predicate to needing to ask the questions here. Had the Supreme Court involved said, well, we're not going to cancel ballots because of the dating error, we wouldn't be here to say, is the decision under state law that the date requirement is mandatory and leads to the canceling of ballots? Does that violate the federal materiality provision? So the fact that the Supreme Court arrived at this decision is not conclusive here, but only introduces the questions that need to be asked under the federal statute. Looks like the Pennsylvania Supreme Court separated out registration or qualification to vote from vote casting. And they said with respect to the administrative part of vote casting, the failure to have a date means the vote is not counted. It's mandatory and the vote is not counted for whatever reason they said that. So it seems like you then have to show that under the federal statute, there is something that is in there that overrides that. Am I correct? That is correct. Had Ball said under state law, this wasn't a mandatory obligation that leads to canceling the ballots for the failure or permissions, there would be no issue under the federal statute. If Ball hadn't decided, we could have gone the way Judge Mady did in his concurrence in Migliore. He just said, you know, they're not looking at it as a vote counting. So I don't think the Supreme Court's decision in Ball depends on this distinction between registration and ballot casting. In fact, I don't think anything in the materiality provision contemplates that distinction. In all instances in which the federal statute applies, there will have been noncompliance with some mandatory state rule. If there is not, voters aren't going to be disenfranchised or have their ballots cast over. So if they're not disenfranchised, it's not affecting their qualification to vote. They could vote later on if they get enough notice and rectify whatever the error or omission was. Well, ultimately, if the error or omission is leading to the ballot being canceled, then they are being denied the right to vote as the statute defines vote. And the statutory definition of vote is quite clear that the distinction – They're still qualified to vote, are they not? They are qualified to vote, but they need the qualifications for vote, which is precisely what the problem is here. They are being – their ballot is being excluded. Their vote is being denied as the statute defines vote because of an error or omission that is immaterial to the right to vote. Now, if I can walk through the return on vote, I think it will illustrate how the two clauses in the materiality statute work together. So the first clause defines which act, record, or paper applies under the text of the statute is. You have the right of any individual to vote, and vote is defined to include not only registration, but ultimately having a ballot canceled in any election because of an error or omission on any record or paper related to any application, registration, or other aspect with devoting. The return on vote declaration we are discussing, the one that voters undervolve are required to sign a date, fits that. It is a record or paper that ultimately fits within the statutory definition. The second clause determines whether or not the errors or omissions are material, and under that clause you look at what information the voter has failed to provide. So let's take the signature and the date, both of which appear on the same record, and consider them differently and see how the second clause operates there. The date has no function, is not material in determining whether a voter is qualified, and thus is within the scope of the second clause of the statute. The signature, which Pennsylvania law treats differently under 25 PS 3553, which is the statute that requires voters to sign the declaration in account of the perjury, but is otherwise set out as date, is captured here because the signature is material ultimately to whether the voter is qualified. But as the district has said, identity is an essential component of whether someone is qualified. So it's the first clause that defines that the record or paper here, the return on vote declaration is the second. Ultimately, we need to look at various errors or omissions under the second clause. What your briefing said is that the statute's second clause, that's the indeterminate clause. That's correct. That's the first clause of the application to when the, quote, error or omission is not material in determining whether such individuals qualified under state law to vote in such election. So contrary to the RNC's description, there is no requirement that the records and papers be used in determining someone's qualifications. That's it. That's all you say. So what their argument does, and you see this explicitly on page 23 of the statute. Can you explain what you mean by that? Certainly. So ultimately, the first clause determines which records or papers are covered. It makes quite clear that any record or paper requisite to voting, I think, the declaration clearly meets that component of statute based on how vote is defined, based on the use of any election, any record or paper. Ultimately, the second clause requires asking whether the information that the voter either failed to provide or erroneously provides is material to qualifications. What their interpretation asks the court to do is ask whether the record or paper itself, and you see this explicitly on page 23 of the brief. It's the same error that Justice Bronson made in his dissent involved, requires that the record or paper be used in determining. But that's not what the statute does. You're saying this record or paper vote in terms of the mail-in ballot or the absentee ballot does not determine qualification. This one, the record here actually is a statement from the voter that they are qualified to vote. So I do think it does do that. Then what does your brief say? So contrary to the RNC's description, there is no requirement that records or papers be used to determine someone's qualification. I think that's correct. I think it happens to be that the declaration here is a statement. Your brief is saying as a general matter, it doesn't have to be a document that serves that purpose. It just happens to be that the declaration in front of us, because it uses the word by the voter, I am qualified, it happens to fill in that bucket. That's precisely right, Tricia. And both the Fifth Circuit in the recent Vote.org decision, the Eleventh Circuit in the 2008 NAACP Browning decision, understand the second clause to act this way. Can I ask you, let's assume that you're right, that the envelope is, in fact, a paper covered by the independent clause. Doesn't the state still have the ability to say which ones are defective and which ones are effective? So this, ultimately, the federal statute requires examining whether an error, and I want to be quite clear, this statute leaves plenty of room for states to enforce actually important administration interests. It only acts on immaterial paperwork requirements. It's not immaterial paperwork requirements. It's immaterial qualifications. So the independent clause, the way you're reading it, would capture a very broad set of documents. So going back to my question, doesn't the state get to say which of those are defective? So I think it's correct, Your Honor, that it does capture a broad set of documents, and the requirements on those documents cannot be soliciting immaterial errors. But I think the statute leaves plenty of room for states to achieve important election administration interests because it is limited to documents soliciting immaterial paperwork requirements. Timeliness, for example, the state does not enforce timeliness through any written paperwork requirement. Secrecy, just the same. So this statute is broad as to the specific issue it covers, which is the solicitation of immaterial interest, but it's narrow as to many other ways that permit states to achieve their actually important interests. And the record here is unambiguous and conclusive, but the date does not serve any function. And that's consistent, Your Honor, with the reality that prior to 2020. I guess I'm still trying to understand whether or not it leaves room for that. What I'm trying to understand is where are you drawing the line between defective and error? I think that is. I'm not drawing that line. I do think that. As long as there's an error, it doesn't matter if it's defective under state law or not. I don't think that's the reason it would matter. I think ultimately what would matter was whether the information that you failed to provide correctly is material to your qualifications. But I don't think the distinction between defective or erroneous is one that the statute draws. I think it's important to recognize. Doesn't the right to vote encompass having – it seems that there's no right – I think I'm saying this inartfully, but in discussing whether a denial of a right to vote is because of an error, there is – in sort of conceptualizing it, you could say a right to vote does not encompass the right to have a defective vote count or the right to have defective paperwork processed. Or you could say the right to vote is very broad, the state has a legitimate interest in denying it, and here are the rules. And, again, we defer to those rules. But my question is when are we to say this is a defect that the state is allowed to say is a valid reason to deny. This is an error that is covered by the materiality provision. But just to make sure I understand your answer, I believe you're drawing – getting at the distinction that Justice Alito identified in his dissent about forfeiting the right to vote versus being denied the right to vote. Is that – Very adjacent to that. I don't know if it's exactly, but yes. So ultimately the premise of this statute is noncompliance with some act requisite to voting. If you are not failing to comply, you're not within the confines of the statute. So in all instances, there will have been some failure to comply with a mandatory rule. And I don't think the definition of vote permits drawing a distinction between registration – an error that fails to – or interferes with registration on the one hand and an error that interferes with – and if that distinction existed, it would also be true at registration. You could just as well say that if you fail to provide immaterial information on a record or paper that interferes with registration, it would just be – it would be all the same under the theory that you actually haven't been denied the right to vote. You've simply failed to comply with the rule. But in all instances, there will be some failure to comply. Is there no difference then between undated, which would be noncompliance under Ball, which said that's mandatory, and incorrectly dating, which is Ball interpreting the effect of an error on the sufficiency of the declaration on the envelope? Because under Pennsylvania law, as Ball has interpreted it, properly write the date. However, accounting defines that, and Ball didn't get into that. It's a practical matter of being an incredibly difficult decision to make. There is no distinction. In each case, you have failed to perform an act that state law makes requisite to voting, which is precisely what the statute covers. What's the purpose of the declaration form? The declaration is a requirement that the voter says, I am the individual qualified to submit this document. That's another step in the process where that voter is once again verifying they are a qualified voter. That's right. And your Honor's asked about the Fifth Circuit's decision about whether confirming or voters saying, rather, saying under penalty of perjury, I am the one who is allowed to vote this ballot. I am the qualified individual to do so. That is material. The date is not. But in both cases, we are talking about a paperwork requirement that fits under the first clause of the statute. And, again, appellants have tried to say the signature and the date rise or fall together, despite the record in this case making quite clear the date doesn't serve any function, and despite the fact that Pennsylvania law distinguishes the two. Again, that's 25 PS 3553, which subjects the voter to perjury for falsely signing the declaration, but makes no mention of the obligation. Let's just follow up on one of Judge Chung's points, because I'd like to know what the answer is. How is a voter denied the right to vote if that voter doesn't comply with a state law requirement? Ultimately, the question under this statute is, is the state law requirement that the voter has failed to comply with one that permits excluding them from the electoral process? And that is true whether it's at the registration stage. That is true whether it's at the stage of having their vote tossed out of canvassing, as the case is here. And that is true by virtue of the definition of vote, by virtue of the definition – or by virtue of including this statute at any election, because of any – any remission of any record or paper relating to any application or registration. Congress wrote the first clause here to make clear that it applies from start to finish as to immaterial paperwork required. And is it also your position as your colleagues that a ballot is not paperwork related to another act requisite to vote? I think that's exactly right. And I think the way you would get there would be through the application of the use in generous canon, which makes – which does require reading other act requisite to voting, as having some similar meaning to registrations and applications. The declaration does fit that similarity in both a registration document and in the declaration. You are submitting a document to your county board of elections attesting to the fact that you are qualified. They are incredibly similar documents. I think a ballot is a categorically different type of document from the declaration. All right. Counsel, thank you for your argument. Thank you, Your Honor. And I urge the court to follow the district court's plain text reading on the floor. Go ahead. Your Honors, today's argument only underscores that extending the materiality provision to ballot casting rules and outside of qualification determinations has untenable consequences. Belli's provision has no limiting principle. Materiality provision does not authorize federal courts to review state law rules governing whether a ballot is defective. All it does is authorize review of the application of rules that go to determining qualifications of a voter. We've just heard from counsel for the secretary that states don't use paper-based rules to, for example, protect the secrecy of the ballot. That's completely incorrect. Here in Pennsylvania, Belli is clear that if someone makes any kind of mark on a secrecy envelope, which is not a ballot, including writing their name or making some other identifying mark, that ballot cannot be counted. That protects the secrecy of the ballot. Under their view, however, that would violate the materiality provision because that's not material to whether the voter is qualified to vote. They've divorced, in the statutory language, the paper from the error. They're saying the error has to be non-material, but the paper can relate to anything. Once you do that, you've opened the door to the materiality provision, knocking down every state law paper-based requirement that's not used to determine voter qualifications, even where the state has a host of legitimate interests for pursuing that particular rule. That would be true of the secrecy envelope example I've just given you or the one Judge Chung used earlier, which involved putting a sticker on the secrecy envelope. The statute has to be read in a way that makes sense. The indetermining whether clause applies both to the paper and to the error. It has to be a paper that's used to determine qualifications, and it has to be an error that's used or is not material to that determination. Otherwise, you have papers that have nothing to do with voter qualifications being struck down as a matter of federal law because they don't have anything to do with qualifications, and that simply cannot be correct. There's no record that Congress tried to do that, and the statutory language doesn't allow Congress to do that. Our position faithfully adheres to the statutory language. The touchstone of whether the materiality provision applies is whether the paper or record at issue  and whether the error itself is material to that question. They've tried to dance around that. Identity is part of that? Then would this outer envelope and declaration count as paperwork used in determining or an error or omission in determining? No, it would not because the attestation isn't actually used that way. The question is what's the consequence of applying the rule? If you apply the rule, if election officials apply the rule to determine someone's not qualified, then it's a qualification determination. But here the attestation rule is simply applied to determine whether or not the ballot is valid, so it's a ballot-casting rule. But if the court were to determine – But if it doesn't come from a qualified voter, then it doesn't matter what the ballot says, right? So isn't it more like a verification? I asked your adversary what's the purpose of the declaration, and I believe his answer was to, yet again, verify the qualification of the voter. It is an attestation by the voter, but it is not itself one of the qualifications. It's not a qualification. It attests to the qualification, correct? It attests to the qualifications, but the result of that is not some qualification determination by an election official. It's a determination as to the validity of the ballot. But if the court does determine that this is somehow relevant to qualification determinations, the date requirement would be material because it goes to the voter's identity. It's a better way to get at the voter's identity than the signature requirement because election officials can't compare the signature to one they have on file. They're precluded from doing that. They can only verify the date that's handwritten on the ballot. That's what happened in the Holly Act to suss out that it was a third party who committed fraud with the ballot rather than the voter. But under state law, they're also able to determine whether it's genuine or the person who's casting the vote. So, for instance, if my vote is enclosed but it's Judge Schwartz's signature, they are allowed to assess that, not just the date. I believe the materiality provision allows them to do that, but not state law. There's a specific state provision that says that. Well, there's a state provision that requires a signature, but it doesn't say that election officials can actually go back and verify that signature. I think under 3063, or maybe it's a provisional ballot, one of them says that if the signature on the envelope is, or maybe it's under 30, anyway, it's in here somewhere, that if the signature is not genuine or the person casting the vote, that has to be considered on the declaration. So is that, again, that goes to identity, is that part of a qualification to vote under your? Yes. On that theory, the date requirement would also be material to identity for the reasons that I've already laid out. So together. And they're all part of the same statutory clause, and they convey the same ritual function and the solemnity of voting. They've made this point about independent and dependent clauses, but that point doesn't hold together. If you look at subsection A, subsection A also uses the indetermining language in a dependent clause, and they acknowledge that subsection A is limited to qualification determinations. So the fact that it's a dependent clause in the materiality provision doesn't change that particular result. As Justice Alito pointed out, it would make no sense to judge ballot casting rules by whether they're material to voter qualifications because they serve some other function. Counsel for the United States has also pointed to HAVA, the Help America Vote Act, and that statute says that each state shall adopt uniform and non-discriminatory standards that define what constitutes a vote. That's at 52 U.S.C. 21081A6. That's the language Congress uses when it wants to get at ballot casting rules. That language is noticeably absent from the materiality provision. The materiality provision is limited to qualification determinations. I'll also address counsel's argument. One of the counsels said there's no dispute that application of the date requirement denies the right to vote. We do dispute that. Application of the date requirement does not deny the right to vote. The right to vote is denied when election officials don't allow someone to receive a ballot, but not when election officials properly deem the individual qualified, give them a ballot, and then decline to count it because it's defective under state law. They've been unable to draw a line around ballots themselves. Their own position contradicts the statutory definition of vote, which says casting a ballot and having the ballot counted. Our position makes clear that ballots aren't included in the materiality provision, but for the right reason, that they're not used to determine a voter's qualifications. Counsel, we're glad you're well past the red light, so another minute. Thank you. Well, thank you, Your Honor. We ask the court to reverse. That was succinct. On behalf of the panel, we thank counsel and the various amici who have both argued orally, as well as who submitted briefings to us for the very helpful arguments, and the court will take the matter under advisement. Thank you. And in addition, because of the wonderful advocacy you gave today, we would like you to order a copy of the transcript and we ask the party to please share the expense of that transcript. Okay?